**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

JOSEPH M. ARPAIO, Sheriff,
*Defendant-Appellant.*

No. 17-10448

D.C. No.
2:16-cr-01012-SRB-1

ORDER

Filed October 10, 2018

Before: A. Wallace Tashima, William A. Fletcher,
and Richard C. Tallman, Circuit Judges.

Order;
Concurrence by Judge W. Fletcher;
Statement by Judge Tashima;
Dissent by Judge Callahan;
Statement by Judge Tallman

## SUMMARY[*]

### Appointment of Special Counsel

A motions panel filed an order on behalf of the court denying rehearing en banc of the motions panel's April 17, 2018 published order authorizing the appointment of a special prosecutor to provide briefing and argument to the merits panel that will hear former Sheriff Joe Arpaio's appeal from the district court's denial of his motion to vacate his conviction for criminal contempt of court.

Concurring in the denial of rehearing en banc, Judge W. Fletcher, joined by Judges Graber, Wardlaw, Gould, Paez, and Christen, wrote to emphasize the limited role of the special prosecutor and the legality of the order.

In a statement regarding the denial of rehearing en banc, Judge Tashima wrote that he agrees with and fully supports Judge W. Fletcher's concurrence in the denial of rehearing en banc.

Dissenting from the denial of reconsideration en banc, Judge Callahan, joined by Judges Bybee, Bea, and Ikuta, wrote that the panel should have stuck to the tried and true solution of simply appointing amicus curiae to defend the district court's vacatur ruling in this situation in which the Department of Justice agrees that the conviction should be vacated. She wrote that the appointment of the special prosecutor is ill-advised and unnecessary, constitutionally

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

infirm, and an unprecedented and unauthorized intrusion of executive power.

In a statement regarding the denial of rehearing en banc, Judge Tallman wrote that he agrees with the views expressed by Judge Callahan in her dissent from the denial of rehearing en banc.

---

## ORDER

A judge of the court sua sponte called for a vote on whether to rehear en banc the published order in this case dated April 17, 2018. A vote was taken, and a majority of the non-recused active judges of the court failed to vote for en banc rehearing. Fed. R. App. P. 35(f). Rehearing en banc is **DENIED**.

---

W. FLETCHER, Circuit Judge, joined by GRABER, WARDLAW, GOULD, PAEZ, and CHRISTEN, Circuit Judges, concurring in the denial of rehearing en banc:

Former Sheriff Joe Arpaio has appealed to our court from the district court's denial of a motion to vacate his conviction for criminal contempt of court. On April 17, 2018, a motions panel of our court issued an order authorizing the appointment of a "special prosecutor to provide briefing and argument to the merits panel" that will hear Arpaio's appeal. *United States v. Arpaio*, 887 F.3d 979, 980 (9th Cir. 2018). The role of the "special prosecutor" under the order will be limited to providing briefing and argument to the merits panel.

A member of our court unsuccessfully sought en banc rehearing and reversal of the order of the motions panel. Several judges now dissent from the decision of our full court not to rehear the matter en banc. I concur in the denial of en banc rehearing. I write to emphasize two things—the limited role of the special prosecutor, and the legality of the order.

## I. Limited Role of the Special Prosecutor

Arpaio violated an order of the district court. The United States prosecuted Arpaio for criminal contempt of court and obtained a conviction on July 31, 2017. President Trump pardoned Arpaio on August 25, prior to sentencing by the district court. Arpaio then moved to dismiss the prosecution and to vacate the conviction. On October 19, 2017, the district court granted Arpaio's motion to dismiss the prosecution but denied his motion to vacate the conviction. Arpaio appealed the denial.

On December 13, 2017, in response to an inquiry from our court, the government wrote that it "does not intend to defend the district court's order from October 19, 2017 . . . ; instead, the government intends to argue, as it did in the district court, that the motion to vacate should have been granted." United States Statement at 2. The government took "no position on whether the Court should appoint counsel to make any additional arguments." *Id.* The motions panel then issued the order now at issue on April 17, 2018.

After the motions panel issued its order, the government objected to the appointment of a private attorney as a special prosecutor, reversing the position it had taken on December 13. The government wrote on June 22, 2018: "The prosecution of crimes is a prerogative of the Executive

Branch, subject to a narrow exception for appointment of a special prosecutor in contempt actions that is codified in [Federal] Rule [of Criminal Procedure] 42. But the appointment of a special prosecutor under the circumstances of this case does not fit within that narrow exception, and thus would intrude into an area that is constitutionally reserved for the Executive." United States Brief at 2.

The role of a private attorney appointed as a special prosecutor, either under Rule 42 or under the court's inherent authority, is the same as the role of a federal prosecutor. The role of a federal prosecutor, and the corresponding role of a special prosecutor, is not limited to actions in the district court. The role of a federal prosecutor is to initiate a prosecution for contempt of court, to prosecute the case in the district court, and, if a conviction is obtained, to defend the conviction in the district court and the court of appeals.

In the case before us, the government was successful in obtaining a conviction for criminal contempt of court. The part of the prosecutor's role that remains is defending on appeal that successful result. The motions panel authorized the appointment of a special prosecutor to perform that function—to present in briefing, and by oral argument if necessary, arguments in support of the district court's denial of Arpaio's motion to vacate his conviction.

## II. Legality of the Order

The dissenters characterize the order of the motions panel as "constitutionally infirm" and as an "unprecedented—and unauthorized—intrusion of executive power." Diss. Op. at 13. This is incorrect.

The order of the motions panel was an exercise of judicial rather than executive power.  The order authorizes the appointment of private counsel to assist the court in evaluating the merits of an appeal, in a criminal contempt-of-court case, after the government has declined to perform that function.

### A.  Rule 42

Federal Rule of Criminal Procedure 42 applies equally to all federal courts in which a government or special prosecutor would act—whether seeking and obtaining in district court a conviction for criminal contempt, or defending in an appellate court a conviction obtained in the district court.  Federal Rule of Criminal Procedure 1, provides:

> These rules govern the procedure in all criminal proceedings in the United States district courts, the United States courts of appeals, and the Supreme Court of the United States.

FED. R. CRIM. P. 1(a)(1).

Federal Rule of Criminal Procedure 42(a)(2) authorizes the appointment of a private attorney to prosecute criminal contempt of court when the government declines that role.  It provides:

> *Appointing a Prosecutor:* The court must request that the contempt be prosecuted by an attorney for the government, unless the interest of justice requires the appointment of another attorney.  If the government declines

the request, the court *must* appoint another attorney to prosecute the contempt.

FED. R. CRIM. P. 42(a)(2) (second emphasis added).

Rule 42(a)(2) is not itself the source of a federal court's authority to appoint a private attorney as a special prosecutor to perform the role of a government attorney in prosecuting a criminal contempt of court. Rather, it is an implementation of a court's pre-existing inherent authority to appoint a special prosecutor when the government declines to prosecute.

An earlier version of Rule 42 did not explicitly authorize the appointment of a private attorney as a special prosecutor to prosecute criminal contempt of court. The earlier Rule provided only that notice be given to an alleged contemnor that a government or private attorney had been appointed to prosecute the contempt. In *Young v. United States ex rel. Vuitton*, 481 U.S. 787, 793 (1987), the Second Circuit had upheld a district court order appointing two private attorneys as "special prosecutors" to prosecute a criminal contempt of court. The Supreme Court struck down the appointment on the ground that the two special prosecutors were not disinterested, given that they represented one of the parties in the underlying civil case. But the Court wrote at length to uphold the right of the court to appoint a disinterested private attorney as a special prosecutor.

The Court acknowledged that Rule 42, as then written, did not explicitly authorize a court to appoint private attorneys as special prosecutors. But it held that courts have pre-existing inherent authority to make such appointments.

> While it is true that Federal Rule of Criminal Procedure 42(b) does not provide authorization for the appointment of a private attorney, it is long settled that courts possess *inherent authority* to initiate contempt proceedings for disobedience to their orders, *authority which necessarily encompasses the ability to appoint a private attorney to prosecute the contempt.*

*Id.* (emphases added).

Rule 42 was amended in 2002 to add what is now Rule 42(a)(2). The Committee Notes cite *Young* and explain the rationale for the amendment:

> Revised Rule 42(a)(2) now explicitly addresses the appointment of a "prosecutor" and adopts language to reflect the holding in *Young v. United States ex rel. Vuitton*, 481 U.S. 787 (1987). In that case the Supreme Court indicated that ordinarily the court should request that an attorney for the government prosecute the contempt; only if that request is denied, should the court appoint a private prosecutor. The rule envisions that a disinterested counsel should be appointed to prosecute the contempt.

FED. R. CRIM. P. 42 Advisory Committee Notes to 2002 amendment.

### B. Inherent Power

Rule 42 is rooted in the longstanding inherent power of the judiciary to appoint disinterested private attorneys as special prosecutors to pursue criminal contempt proceedings in federal court when government prosecutors are unwilling or unable to perform that function. The Court in *Young* made clear that Rule 42 is rooted in an inherent judicial power that exists independently of the Rule. Ordinary criminal prosecutions are, of course, exercises of the executive power. Prosecutions for criminal contempt of court are different. Such prosecutions are vindications of the judicial power, and the use of private attorneys as special prosecutors is part of the judicial function. The Court wrote in *Young*:

> The Rule's assumption that private attorneys may be used to prosecute contempt actions reflects the longstanding acknowledgment that the initiation of contempt proceedings to punish disobedience to court orders *is a part of the judicial function*.

*Young*, 481 U.S. at 795 (emphasis added).

In the case before us, a government prosecutor sought and obtained a conviction for criminal contempt in the district court. The government then declined to defend the conviction when Arpaio appealed the district court's denial of his motion for vacatur. The Court in *Young* instructs us what to do in that circumstance:

> If the Judiciary were completely dependent on the Executive Branch to redress direct affronts to its authority, it would be powerless to

protect itself if that Branch declined prosecution. The logic of this rationale is that a court ordinarily should first request the appropriate prosecuting authority to prosecute contempt actions, and should appoint a private prosecutor only if that request is denied. Such a procedure ensures that the court will exercise its inherent power of self-protection only as a last resort.

*Id.* at 801.

Our court followed the procedure prescribed in *Young*. We inquired whether the government would defend Arpaio's conviction on appeal. When the government responded that it did not intend to do so, the motions panel issued an order authorizing the appointment of a special prosecutor to perform the prosecutorial functions that the government had declined to perform. Such an appointment, as the Court's opinion in *Young* makes clear, is "part of the judicial function," enabling the judiciary "to protect itself if [the Executive] Branch decline[s] prosecution." *Id.* at 795, 801.

### III.  Our Dissenting Colleagues' View

Our dissenting colleagues have a much narrower view of Rule 42 and the judiciary's inherent power. They concede, as they must, that the judicial branch has the authority under Rule 42 and its inherent power to "protect itself" if the executive branch declines to provide that protection. They also concede, as they must, that a court's authority under Rule 42 and its inherent power extends to the appointment of private attorneys as special prosecutors to initiate proceedings for criminal contempt of court.

However, our colleagues contend that a court's authority ends as soon as criminal contempt-of-court proceedings are "initiated." Diss. Op. at 17–18. They write, "Once a contempt proceeding begins, the court's authority is vindicated and the court has no further stake in the matter." *Id.* This cannot be right. Mere "initiation" of a criminal contempt proceeding is hardly sufficient to protect the integrity of the court. Actual prosecution of that contempt, once initiated, is necessary. Defense of a conviction on appeal is also necessary. That is, all of the normal functions of a prosecutor are necessary if the judiciary is fully to "protect itself" when the executive branch declines to provide that protection.

\* \* \*

The order of the motions panel authorized the appointment of a special prosecutor under Rule 42 and its inherent power. During the pendency of Arpaio's appeal to our court, the special prosecutor will continue the prosecution for criminal contempt of court that the government has abandoned.

Once the government declined to continue the prosecution by defending Arpaio's conviction on appeal, the motions panel had no choice. Rule 42 specifies that if the government declines to prosecute, "the court *must* appoint another attorney to prosecute the contempt." FED. R. CRIM. P. 42(a)(2) (emphasis added). As the Supreme Court wrote in *Young*:

> If the Judiciary were completely dependent on
> the Executive Branch to redress direct affronts
> to its authority, it would be powerless to

protect itself if that Branch declined prosecution.

481 U.S. at 801.

---

TASHIMA, Senior Circuit Judge, statement regarding denial of rehearing en banc:

I agree with and fully support Judge Fletcher's concurrence in the denial of rehearing en banc.

---

CALLAHAN, Circuit Judge, with whom BYBEE, BEA, and IKUTA, Circuit Judges, join, dissenting from denial of reconsideration en banc:

The question before the motions panel was a simple one: Given that the Unites States Department of Justice agrees with the appellant, Sheriff Arpaio, on the legal point that Arpaio's contempt conviction should be vacated, what should the court do to ensure the merits panel receives briefing and argument on both sides of the issue? The tried and true solution is to appoint amicus curiae to provide such briefing. The panel majority, unsatisfied with having already appointed amici curiae who have ably briefed the merits, took the unprecedented step of appointing a "special prosecutor" to supplant the Department of Justice.

We should have reconsidered the majority's decision en banc. As Judge Tallman states in his dissent, the appointment of a special prosecutor is "ill-advised and unnecessary."

The appointment is also constitutionally infirm. The majority's we-see-no-reason-why-not approach does not justify its admittedly unprecedented—and unauthorized—intrusion of executive power.

I

Judge G. Murray Snow (D. Ariz.) issued an order of charges for criminal contempt against former Maricopa County Sheriff Joseph M. Arpaio (and others), and requested that the United States Attorney's office prosecute Sheriff Arpaio. The government accepted the request, and the Public Integrity Section of the United States Department of Justice successfully prosecuted Sheriff Arpaio in a bench trial conducted by Judge Susan R. Bolton, obtaining a conviction of criminal contempt on July 31, 2017. Before sentencing, however, President Donald Trump pardoned Arpaio. Rather than challenge the conviction, the sheriff accepted the pardon. He then moved to dismiss the action and to vacate the conviction and all other orders in the case. The district court granted the first request but denied the second. Arpaio appeals from the denial of the motion to vacate.[1]

Non-parties who served as amici curiae in the district court proceedings filed a motion requesting permission to

---

[1] Sheriff Arpaio's appeal is limited to the question of whether, in light of the pardon, the district court should have vacated the conviction. No one appealed the order dismissing the action. Our court denied a late-filed request for the appointment of counsel to cross-appeal the dismissal on behalf of the government because the time to appeal had expired.

participate as amici curiae in the appeal.[2]  The motion also asked the court "to appoint a private attorney" under Federal Rule of Criminal Procedure 42 to defend the denial of the request for vacatur "to ensure that this Court has the full set of issues in this matter before it in an adversarial proceeding." The court granted the motion in part, directed that the Clerk file amici curiae's proposed merits brief, which defends the district court's decision, and allowed amici to file a supplemental merits brief.[3]

The motions panel also ordered the government to "file a statement indicating whether it intends to enter an appearance and file an answering brief in this appeal."  The order further stated that if the government intended not to defend the district court's order denying the motion to vacate, the government "shall also provide its position on whether this court should appoint counsel to represent the government's interests on appeal and defend the district court's order."  The order did *not* indicate that the panel was considering replacing the government with a "special prosecutor."

The government responded that it "intends to represent the government's interests in this appeal."  The government further stated that it "does not intend to defend the district

---

[2] These amici include The Protect Democracy Project, Inc. (which is represented by Perkins Coie LLP and Messing & Spector LLP), Free Speech for People, The Coalition to Preserve, Protect and Defend, and the Roderick and Solange MacArthur Justice Center (Northwestern Pritzker School of Law).

[3] Other non-parties, Erwin Chemerinsky, Michael E. Tigar, and Jane B. Tigar (who are represented by Riordan & Horgan), have also sought leave to file a brief as amici curiae and submitted a proposed brief defending the district court's denial of the request for vacatur.

court's order from October 19, 2017 . . . ; instead, the government intends to argue, as it did in the district court, that the motion to vacate should have been granted. We take no position on whether the Court should appoint counsel to make any additional arguments."

On April 17, 2018, over a dissent by Judge Tallman, the motions panel issued its published order stating it "will appoint a special prosecutor." *United States v. Arpaio*, 887 F.3d 979, 980 (9th Cir. 2018). The panel acknowledged the lack of any precedent for the court appointing a special prosecutor in a proceeding with a similar posture. *Id.* at 981–82. The panel justified its unprecedented action by stating, "[w]e see no reason why such appointment should not take place under Rule 42(a)(2)." *Id.* at 982.

The parties were then ordered to file supplemental briefs on "whether the Court has the authority, either pursuant to Fed. R. Crim. P. 42(a)(2) or under its inherent authority, to appoint a special prosecutor under the circumstances presented by this case." *United States v. Arpaio*, 891 F.3d 1130, 1130–31 (9th Cir. 2018). The parties and amici filed supplemental briefs. The Department of Justice made clear in its brief that it has no intent to cede its role as the prosecutor who brought this action to a replacement special prosecutor. The government argued that the court lacks the power to appoint a special prosecutor, as opposed to amicus counsel, at this stage of the proceedings.

II

A

A court's authority to appoint a "special prosecutor" is extremely limited. Such an exercise of executive-like power is authorized only when necessary to vindicate the court's own authority. *See Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 793–96, 800–01 (1987).

"The principle of separation of powers was not simply an abstract generalization in the minds of the Framers: it was woven into the document that they drafted in Philadelphia in the summer of 1787." *Buckley v. Valeo*, 424 U.S. 1, 124 (1976). "Each branch 'exercise[s] . . . the powers appropriate to its own department,' and no branch can 'encroach upon the powers confided to the others.'" *Patchak v. Zinke*, 138 S. Ct. 897, 904–05 (2018) (alterations in original). The Supreme Court has cautioned that each branch—including the judiciary—must "resist[]" the inherent pressure "to exceed the outer limits of its power, even to accomplish desirable objectives." *I.N.S. v. Chadha*, 462 U.S. 919, 951 (1983).

The judicial branch cannot take, or be given by another branch, "executive . . . duties of a nonjudicial nature" where such duties are not provided for in the Constitution. *See Buckley*, 424 U.S. at 123. "The purpose of this limitation is to help ensure the independence of the Judicial Branch and to prevent the Judiciary from encroaching into areas reserved for the other branches." *Morrison v. Olson*, 487 U.S. 654, 677–78 (1988). The Supreme Court commands "vigilance" against the "danger[]" of the judicial branch being "allowed 'tasks that are more properly accomplished by [other]

branches.'" *Mistretta v. United States*, 488 U.S. 361, 383 (1989) (quoting *Morrison*, 487 U.S. at 680–81).

Although the Constitution squarely endows the executive branch with the prosecutorial power, the Supreme Court has recognized a limited judicial power to appoint a special prosecutor to initiate criminal contempt proceedings. *See Young*, 481 U.S. at 800–01. This inherent power is justified by the judiciary's need "to vindicate its own authority without complete dependence on other Branches." *Id.* at 796. But that doesn't give courts carte blanche to exercise control over this executive function whenever they "see no reason why" not. *See Arpaio*, 887 F.3d at 982. Rather, "[t]he need to vindicate a court's authority is . . . satisfied by ensuring that an alleged contemner will have to account for his or her behavior in a legal proceeding, regardless of whether the party is ultimately convicted or acquitted." *Young*, 481 U.S. at 796 n.8.

In other words, the need for the judiciary's limited quasi-executive power—and thus the power itself—is extinguished once criminal contempt proceedings are *initiated*. The Supreme Court repeated several times in *Young* that the power of appointment is limited to the "initiation" of contempt proceedings. *See, e.g.*, *Young*, 481 U.S. at 793 ("[C]ourts possess inherent authority to *initiate* contempt proceedings for disobedience to their orders." (emphasis added)); *id.* at 795 ("[T]he *initiation* of contempt proceedings to punish disobedience to court orders is a part of the judicial function." (emphasis added)); *id.* at 796 ("Courts cannot be at the mercy of another Branch in deciding whether such proceedings should be *initiated*." (emphasis added)); *id.* at 800–01 ("[C]ourts have long had . . . the authority to appoint private attorneys to *initiate* such proceedings." (emphasis

added)); *id.* at 801 ("[A] court has the authority to *initiate* a prosecution for criminal contempt." (emphasis added)). Once a contempt proceeding begins, the court's authority is vindicated and the court has no further stake in the matter. *See id.* at 796 n.8 ("A court's ability to institute a contempt proceeding is therefore essential to the vindication of its authority in a way that the ability to determine guilt or innocence is not.").[4]

Additionally, although "a court has the authority to initiate a prosecution for criminal contempt, its exercise of that authority must be restrained by the principle that 'only "[t]he least possible power adequate to the end proposed" should be used in contempt cases.'" *Id.* at 801 (quoting *United States v. Wilson*, 421 U.S. 309, 319 (1975)) (alteration in original). "This principle of restraint in contempt counsels caution in the exercise of the power to appoint a private prosecutor." *Id.* Such power exists "only as a last resort," which means only if the court first asks the appropriate prosecuting authority to initiate contempt proceedings and that request is declined. *Id.*

B

The majority reaches two conclusions in support of its decision to "appoint a special prosecutor." First, while acknowledging there is no precedent for expansion of the

---

[4] Even if a court's power to appoint a prosecutor is not extinguished upon the initiation of criminal proceedings, such power certainly does not survive past an unappealed conviction. In this regard, the posture of this case is significant. Rather than challenge his conviction, Arpaio chose to accept the Presidential pardon. The district court then properly dismissed the case in light of the pardon. Arpaio does not appeal his conviction; he appeals only the district court's refusal to vacate its determination of guilt.

power to appoint a special prosecutor to the situation here, the majority nonetheless concludes that it "ha[s] the authority to appoint counsel under Federal Rule of Criminal Procedure 42." *Arpaio*, 887 F.3d at 981. Second, the panel concludes it "ha[s] inherent authority to appoint special counsel." *Id.* at 982. Neither conclusion withstands scrutiny.

The majority's assertion that Rule 42 empowers federal judges to appoint a special prosecutor is simply wrong. The Supreme Court stated in *Young* that Rule 42 "does not provide authorization for the appointment of a private attorney." *Young*, 481 U.S. at 793; *see id.* at 794 (observing that Rule 42 "does not itself purport to serve as authorization for" the practice of appointing a special prosecutor). Rather, such limited authority is inherent in the constitutional grant of power to the judiciary, and Rule 42 merely refers to that authority and "speaks only to the procedure for providing notice of criminal contempt." *Id.* at 793 (emphasis omitted). The Federal Rules of Criminal Procedure, as promulgated by the Supreme Court under the Rules Enabling Act, could no more *grant* Article III judges the power to appoint a prosecutor to initiate criminal proceedings than the judicial branch or legislative branch could unilaterally usurp some purely executive function.

The only explanations offered for the majority's asserted power to appoint a special prosecutor is that the majority "see[s] no reason why such an appointment should not take place under Rule 42" and that the "operation" of Rule 42 "is not confined to investigations and trials in the district court."

*Id.* at 981–82.[5]   In seeing no reason to doubt its authority to appoint a special prosecutor, the majority overlooks constitutional constraints on the court's power.

Curiously, the majority seeks to justify the appointment of a special prosecutor by relying on the "longstanding practice" of appointing a disinterested party to serve as amicus curiae to defend a lower court's decision when the United States declines to defend the decision.[6]   *Arpaio*, 887 F.3d at 982.   To state the obvious:  appointment of a special prosecutor as contemplated by Rule 42 is not the same thing as appointment of appellate counsel or amicus curiae simply to brief and argue a case on appeal.   A "special prosecutor" is "[a] lawyer appointed to investigate and, if justified, seek indictments in a particular case."   Prosecutor, Black's Law Dictionary (10th ed. 2014).   In contrast, "amicus curiae" is "[s]omeone who is not a party to a lawsuit but who

---

[5] In asserting that the "operation" of Rule 42 is not confined to activities in the district court, the panel fails to recognize the distinction between a *special prosecutor's* powers once appointed (which can continue into an appeal) and the *court's* power to appoint a special prosecutor in the first instance on appeal.  The majority cites no authority stating that the judiciary's power to appoint a special prosecutor is coterminous with the hypothetical duration of the special prosecutor's power once appointed.  Indeed, such a view is contrary to the *Young* Court's narrow construction of the judiciary's power.

[6] Amici's attempt to defend the majority's decision suffers from the same defect.  Tellingly, in their brief on the en banc question, amici painstakingly avoid using the term "special prosecutor" other than when quoting the panel's order and reciting *Young*'s holding that "courts possess inherent authority to initiate contempt proceedings."  Instead, like the panel, they seek to justify the order by asserting the undisputed proposition that courts have the power to appoint amicus or appellate counsel to defend a lower court's judgment.

petitions the court or is requested by the court to file a brief in the action because that person has a strong interest in the subject matter." Amicus Curiae, Black's Law Dictionary (10th ed. 2014). As the Department of Justice notes, "[t]he distinction is important because, by its nature, counsel appointed as amicus would be limited to defending the judgment and could not claim any of the powers associated with a special prosecutor."[7]

Despite the clear distinction between a "special prosecutor" on the one hand and "appellate counsel," "counsel," or "amicus curiae" on the other hand, the majority uses these distinct labels throughout its order as if they were

---

[7] A special prosecutor's powers are broad. A special prosecutor appointed by the Attorney General under the former Ethics in Government Act, and the regulations that replaced that Act when it expired in 1999, is bestowed with "the full power and independent authority to exercise all investigative and prosecutorial functions of any United States Attorney." 28 C.F.R. § 600.6; *see also* 28 U.S.C. § 594(a) (providing that a special prosecutor's powers include "conducting proceedings before grand juries and other investigations," "making applications to any Federal court . . . for warrants, subpoenas, or other court orders," and "initiating and conducting prosecutions in any court of competent jurisdiction, framing and signing indictments, filing informations, and handling all aspects of any cases, in the name of the United States"). A special prosecutor appointed under Rule 42 to prosecute contempt necessarily has the same, or at least similar, prosecutorial powers. And just as we have no ability to expand or to restrict the United States Attorney's prosecutorial powers, we are powerless to exercise control over the prosecutorial function of a special prosecutor appointed to represent the government. Here, of course, the movants wish the special prosecutor to take a position in litigation that the district court properly denied Arpaio's motion to vacate the fact of his conviction. That is directly opposite to the position taken by the United States. The panel does not tell us who will resolve such conflicts between the special prosecutor and the United States Department of Justice.

interchangeable.[8]  The majority's citation to *Lucia v. SEC*,
138 S. Ct. 923 (2018), is ironic.  *See Arpaio*, 887 F.3d at 982.
In that case, the Supreme Court invited a particular attorney
"to brief and argue this case, as *amicus curiae*, in support of
the judgment below."  *Lucia*, 138 S. Ct. 923.  Like in *Lucia*,
the panel's prior appointment of amici is all that is needed
here.   Yet the majority eschews the Supreme Court's
approach, instead somehow finding in *Lucia*'s single-
sentence appointment of amicus curiae support for the
appointment of a special prosecutor to displace the
Department of Justice.

The majority's conflation of the routine appointment of
amici with the extraordinary act of appointing a special
prosecutor not only violates the separation of powers, but is
also sloppy, creates bad law, and invites reversal by the
Supreme Court.

C

The appointment of a special prosecutor is completely
unnecessary.

First, the United States did not decline the district court's
request to prosecute Sheriff Arpaio for contempt.  The district
court's authority was vindicated when the government
initiated contempt proceedings.  Although the district court

---

**8** *See Arpaio*, 887 F.3d at 981 ("we will appoint a special
prosecutor"); *id.* ("unless we appoint a special prosecutor"); *id.* ("we have
the authority to appoint counsel under [Rule 42]"); *id.* at 982 ("we have
inherent authority to appoint a special counsel"); *id.* ("inherent authority
to appoint disinterested counsel"); *id.* ("inherent judicial power to appoint
appellate counsel"); *id.* ("inherent authority to appoint an amicus").

had no stake in the outcome of those proceedings, the result was in fact a conviction.

Second, the majority's sole stated purpose in the appointment—to allow the merits panel the benefit of full briefing and argument—does not require or justify the appointment of a special prosecutor. The court's only interest in this litigation is to have the issues raised on appeal fully briefed and argued, and that purpose is achieved by the court exercising its undisputed authority to appoint amicus curiae. Accordingly, even if the government's position that the district court is in error would otherwise result in uneven briefing, the easy solution is the non-controversial appointment of amici to brief the issues.[9]

Indeed, the majority's assertion that the merits panel "will not receive the benefit of full briefing and argument" absent appointment of a special prosecutor is perplexing in light of the panel's prior order granting various groups leave to serve as amici and directing that the Clerk file amici's proposed brief. Given the obvious option of appointing amicus curiae, perhaps even more perplexing is our concurring colleagues'

---

[9] Confession of error by the government does not relieve the court "of the performance of the judicial function." *Sibron v. New York*, 392 U.S. 40, 58 (1968); *Young v. United States*, 315 U.S. 257, 258–59 (1942) ("[O]ur judicial obligations compel us to examine independently the errors confessed."). As stated in the Fourth Circuit case cited by the majority, "the Court commonly appoints an amicus"—not a special prosecutor—when the government confesses error in the lower court's judgment. *See Arpaio*, 887 F.3d at 982 (quoting *United States v. Brainer*, 691 F.3d 691, 693 (4th Cir. 1982)).

suggestion that the motions panel had "no choice" but to appoint a special prosecutor. Conc. Op. at 11.[10]

A cursory review of amici's merits brief (prepared by highly esteemed counsel) confirms that amici vigorously defend the district court's decision. Amici will also be able to respond to the appellant's opening brief because the panel expressly authorized them to "file a supplemental brief addressing the merits of this appeal." Additional proposed amici have filed a separate proposed merits brief that likewise heartily defends the district court.

Even though the court has received merits briefs on both sides of the only issue in this appeal, the panel majority maintains that it is compelled to appoint a special prosecutor to supplant the DOJ. Will the merits panel's consideration of the issue somehow be limited because amici do not have prosecutorial powers in presenting the case for affirmance? No. Will the merits panel's decision regarding vacatur somehow be devoid of effect if rendered without the presence of a "special prosecutor" in the case? No. On top of our unflagging duty to follow the law in deciding the appeal on its merits (as in all cases), do we have some additional interest in arriving at a particular result or seeing to the punishment of Arpaio? Of course not.

---

[10] The concurrence makes this assertion without even attempting to explain why the appointment of amicus curiae is inadequate to serve the majority's sole purpose of "provid[ing] briefing and argument to the merits panel." *Arpaio*, 887 F.3d at 980. We appoint amici all the time to "assist the court in evaluating the merits of an appeal." *See* Conc. Op. at 6.

Nothing about our court resolving this case based on the briefing of the parties and amici either threatens to render the district court that issued the injunction against Arpaio impotent or undermines that court's power in any way. The merits panel's ultimate resolution of the sole issue in this case simply does not implicate the judiciary's interest in ensuring that disobedience of contempt orders is punished.

D

If simply appointing amici to present a brief and argument would have done the trick, why encroach (or even risk encroaching) on the executive branch's prerogative by appointing a special prosecutor?

It is now the law of this circuit—which covers nearly 20% of the nation's population—that a judge may, in the name of getting "full briefing," appoint a special prosecutor to replace the United States Department of Justice provided the judge "see[s] no reason why" not. *Arpaio*, 887 F.3d at 982. And the judge may do this even though the federal prosecutor initiates the criminal action, obtains a conviction, and fully intends to represent the government's interests throughout the proceedings. Under the majority's rationale, a judge could appoint a special prosecutor when he or she simply disagrees with the prosecution strategy or litigation position and thus declares that the United States has abandoned the case.

The combination of the majority's holding being unprecedented and so obviously unnecessary to the panel's stated purpose (i.e., to brief the merits of the appeal) will serve only to undermine public confidence in the merits panel's ultimate decision—whatever it decides. And it isn't difficult to anticipate the mischief that is sure to result from

such an unreasoned application of the judiciary's power to appoint a special prosecutor. Justice Scalia offered a prophetic warning in his concurring opinion in *Young*:

> In light of the broad sweep of modern judicial decrees, which have the binding effect of laws for those to whom they apply, the notion of judges' in effect making the laws, prosecuting their violation, and sitting in judgment of those prosecutions, summons forth much more vividly than [the Supreme Court in *Anderson v. Dunn*, 6 Wheat. 204 (1821)] could ever have imagined the prospect of "the most tyrannical licentiousness."

*Young*, 481 U.S. at 822 (Scalia, J., concurring) (quoting *Anderson*, 6 Wheat. at 228). Perhaps Justice Scalia was right all along that "federal courts have no power to prosecute contemners for disobedience of court judgments, and no derivate power to appoint an attorney to conduct contempt prosecutions." *Id.* at 825 (Scalia, J., concurring).

While Sheriff Arpaio and the Chief Executive who pardoned him have evoked strong feelings from those with opposing political views, we abandon our role as impartial jurists by "wading into that [political] thicket," effectively firing the United States' attorneys, and appointing a special prosecutor in their stead. *See Arpaio*, 887 F.3d at 986 (Tallman, J., dissenting).

III

The executive branch's role is to prosecute. Our role is to adjudicate. When we close our eyes to the constitutional

limits of our power, we are bound to veer out of our lane, and there's no telling what else we might do simply because "we see no reason why" not. The prosecutors here intend to do their job—we should let them and worry about doing our own job.

The panel should have stuck to the tried and true solution of simply appointing amicus curiae to defend the district court's vacatur ruling. The prior appointment of amici is more than adequate to achieve the panel's sole stated purpose of getting briefing and argument for the merits panel. And, unlike the appointment of a special prosecutor, such an appointment doesn't run afoul of the Constitution's separation of powers.

I respectfully dissent from the denial of reconsideration en banc.

---

TALLMAN, Senior Circuit Judge, statement regarding denial of rehearing en banc:

I agree with the views expressed by Judge Callahan in her dissent from the denial of rehearing en banc.