# United States Court of Appeals
## for the Second Circuit

August Term, 2021

(Argued: November 30, 2021　　　Decided: June 22, 2022 )

Docket No. 21-2486

———————————————————————

UNITED STATES OF AMERICA,

*Appellee*,

v.

STEVEN DONZIGER,

*Defendant-Appellant.*

———————————————————————

Before:

PARK, NARDINI, and MENASHI, *Circuit Judges*.

Defendant-Appellant Steven Donziger was convicted of six counts of criminal contempt for repeatedly defying court orders, for which he was sentenced to six months' imprisonment. He challenges the conviction, arguing that the district court's appointment of special prosecutors under Federal Rule of Criminal Procedure 42(a)(2) violated the Appointments Clause of the United States Constitution because (1) the special prosecutors are inferior officers who were not supervised by a principal officer, and (2) Rule 42 does not satisfy the Appointments Clause requirement that "Congress . . . by Law" vest the appointment of inferior officers in the courts.

Before reaching Donziger's Appointments Clause challenges, we must determine whether special prosecutors are officers under the Appointments Clause. We conclude that they are because they wield federal prosecutorial power

and hold a position that is not personal to a specific individual and may last for years. *Cf. Morrison v. Olson*, 487 U.S. 654 (1988). We turn next to Donziger's Appointments Clause arguments and conclude that they lack merit. First, the special prosecutors are subject to supervision by the Attorney General, who has broad statutory authority to "conduct" and to "supervise" all litigation involving the United States. *See, e.g.*, 28 U.S.C. §§ 518(b), 519. This authority includes supervising—and if necessary, removing—the special prosecutors. Second, Donziger failed to raise his challenge to Rule 42 below, and we conclude that the district court did not commit plain error by appointing the special prosecutors in light of directly applicable Supreme Court precedent. *See Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987). Finally, we conclude that the district court did not abuse its discretion by initiating a prosecution against Donziger for repeatedly defying court orders for years. We thus affirm Donziger's conviction.

Judge MENASHI dissents in a separate opinion.

STEPHEN I. VLADECK, Austin, TX (William W. Taylor, III, David A. Reiser, Leila Bijan, Zuckerman Spaeder LLP, Washington, DC; Martin Garbus, Offit Kurman, New York, NY; Ronald L. Kuby, New York, NY; Natali Segovia, Water Protector Legal Collective, Albuquerque, NM, *on the brief*), *for Defendant-Appellant*.

RITA M. GLAVIN, Glavin PLLC, New York, NY (Brian P. Maloney, Seward & Kissel LLP, New York, NY, *on the brief*), *for Appellee*.

ROBERT A. PARKER (Kenneth A. Polite, Jr., Lisa H. Miller, *on the brief*), Criminal Division, Appellate Section, United States Department of Justice, Washington, DC, *for amicus curiae United States Department of Justice in support of Appellee*.

PARK, *Circuit Judge*:

Defendant-Appellant Steven Donziger was convicted of six counts of criminal contempt for repeatedly defying court orders, for which he was sentenced to six months' imprisonment. He challenges the conviction, arguing that the district court's appointment of special prosecutors under Federal Rule of Criminal Procedure 42(a)(2) violated the Appointments Clause of the United States Constitution because (1) the special prosecutors are inferior officers who were not supervised by a principal officer, and (2) Rule 42 does not satisfy the Appointments Clause requirement that "Congress . . . by Law" vest the appointment of inferior officers in the courts.

Before reaching Donziger's Appointments Clause challenges, we must determine whether special prosecutors are officers under the Appointments Clause. We conclude that they are because they wield federal prosecutorial power and hold a position that is not personal to a specific individual and may last for years. *Cf. Morrison v. Olson*, 487 U.S. 654 (1988). We turn next to Donziger's Appointments Clause arguments and conclude that they lack merit. First, the special prosecutors are subject to supervision by the Attorney General, who has broad statutory authority to "conduct" and to "supervise" all litigation involving

3

the United States. *See, e.g.*, 28 U.S.C. §§ 518(b), 519. This authority includes supervising—and if necessary, removing—the special prosecutors. Second, Donziger failed to raise his challenge to Rule 42 below, and we conclude that the district court did not commit plain error by appointing the special prosecutors in light of directly applicable Supreme Court precedent. *See Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987). Finally, we conclude that the district court did not abuse its discretion by initiating a prosecution against Donziger for repeatedly defying court orders for years. We thus affirm Donziger's conviction.

## I. BACKGROUND

A. <u>Civil Contempt</u>

In 2014, the United States District Court for the Southern District of New York found that Donziger, a New York lawyer, had engaged in fraud and racketeering activity in order to obtain an $8.646 billion judgment against Chevron Corporation in Ecuador. *See Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 575–603 (S.D.N.Y. 2014), *aff'd*, 833 F.3d 74 (2d Cir. 2016). As part of the judgment, the district court enjoined Donziger from enforcing the Ecuadorian judgment in the United States or undertaking any acts to monetize or profit from it and ordered Donziger to transfer and assign to Chevron any property that Donziger had

received or would receive that was traceable to the Ecuadorian judgment (the "permanent injunctions"). In February 2018, the court issued a $813,602.71 judgment against Donziger.

A few months later, the court granted Chevron's motion to compel Donziger's compliance with post-judgment discovery requests to identify assets for enforcing the money judgment and to assess his compliance with the permanent injunctions. Donziger refused to comply with the initial motion to compel, a subsequent motion to compel, and finally, a Forensic Protocol Order directing Donziger to surrender his electronic devices to a neutral forensic expert. In May 2019, the court held Donziger in civil contempt for several violations of the permanent injunctions and failure to comply with the Forensic Protocol Order. In an effort to coerce compliance, the court imposed daily escalating fines on Donziger and then ordered him to surrender his passports. Donziger did not pay the fines or surrender his passports, and he continued to disobey the Forensic Protocol Order.

B.    Criminal Contempt

On July 31, 2019, after several more months of Donziger's noncompliance with court orders, the district court issued an order to show cause why he should

not be held in criminal contempt in violation of 18 U.S.C. § 401(3). Counts 1–3 charged Donziger with failure to comply with the Forensic Protocol Order and the order to surrender his passports, and counts 4–6 charged him with violating the permanent injunctions. The court referred Donziger's prosecution to the U.S. Attorney for the Southern District of New York, who "respectfully decline[d] on the ground that the matter would require resources that we do not readily have available." App'x at 59 (alteration in original). The court thus appointed private counsel as special prosecutors under Rule 42(a)(2).

On the first day of Donziger's criminal contempt trial, he moved to dismiss, arguing that the prosecution violated the Appointments Clause because the special prosecutors were inferior officers who lacked supervision by the Department of Justice ("DOJ").[1] The court denied the motion in an oral ruling after concluding that Donziger's "moving papers have given the Court absolutely no basis on which to conclude that the special prosecutors are not subject to any control or supervision whatsoever by the Executive Branch." App'x at 153.

---

[1] Donziger included an email from Acting Deputy Attorney General John P. Carlin to Donziger's attorneys stating, "The Department has received your letters in the Donziger matter. Having reviewed the letters, the Department declines to intervene in the federal-court initiated contempt proceedings." App'x at 156.

6

After trial but before the verdict, Donziger filed another motion to dismiss again arguing that his prosecution violated the Appointments Clause because the special prosecutors were unsupervised inferior officers. On July 26, 2021, the court issued its findings of fact and conclusions of law and found Donziger guilty on all six counts. In the decision, the court also denied Donziger's motion to dismiss, finding that the motion was untimely and that nothing in Rule 42(a) prevented the Attorney General from exercising supervision and review over the special prosecutor. Donziger moved for a new trial based on the same argument, and the court again rejected it.

On October 1, 2021, Donziger was sentenced to six months' imprisonment, and judgment was entered that day. Donziger timely appealed.

## II. DISCUSSION

The Appointments Clause states that the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2.

"The Appointments Clause prescribes the exclusive means of appointing 'Officers,'" *Lucia v. SEC*, 138 S. Ct. 2044, 2051 (2018), and it "is more than a matter of 'etiquette or protocol'; it is among the significant structural safeguards of the constitutional scheme," *Edmond v. United States*, 520 U.S. 651, 659 (1997) (quoting *Buckley v. Valeo*, 424 U.S. 1, 125 (1976)).

Donziger argues that his prosecution was unconstitutional because the special prosecutors are inferior officers who were unsupervised by a principal officer and installed in violation of the Appointments Clause. Before reaching these arguments, we begin with the question whether the special prosecutors are Officers of the United States at all. "[W]e review questions of constitutional interpretation *de novo*." *United States v. Hester*, 589 F.3d 86, 90 (2d Cir. 2009).

A.    Special Prosecutors Are Officers Under the Appointments Clause

It is not obvious from the text of the Appointments Clause who qualifies as an Officer of the United States, but the Supreme Court has provided sufficient guidance in its Appointments Clause jurisprudence to decide this case. To qualify as an officer, an individual must (1) "exercis[e] significant authority pursuant to the laws of the United States" and (2) "occupy a continuing position established by law." *Lucia*, 138 S. Ct. at 2051 (cleaned up). It is undisputed that special

8

prosecutors meet the "significant authority" requirement because they "represent the United States," *Young*, 481 U.S. at 804, and exercise the "sovereign power of the United States," *United States v. Providence J. Co.*, 485 U.S. 693, 700 (1988). We conclude that special prosecutors also hold a "continuing position" and are thus officers under the Appointments Clause.

### 1. Temporary Positions Can Be Offices

The Supreme Court has long held that officers occupy a "continuing position" established by law. *See United States v. Germaine*, 99 U.S. 508, 511–12 (1878); *Auffmordt v. Hedden*, 137 U.S. 310, 327–28 (1890). The Court's early Appointments Clause cases held that to be an officer, one's duties had to be "continuing and permanent, not occasional or temporary." *Germaine*, 99 U.S. at 511–12; *see Auffmordt*, 137 U.S. at 327 (merchant appraiser not an officer because he "acts only occasionally and temporarily").

More recently, the Court has indicated that "continuing position" does not exclusively refer to permanent positions. In *Morrison*, the Court said "[i]t is clear" that an independent counsel is an officer even though the position terminates when the counsel "has completed or substantially completed any investigations or prosecutions undertaken pursuant to the [Ethics in Government] Act." 487 U.S.

at 664, 671 n.12; *see also Ass'n of Am. R.Rs. v. U.S. Dep't of Transp.*, 821 F.3d 19, 37–38 (D.C. Cir. 2016) (holding that an arbitrator—appointed only if Amtrak and the Federal Railway Administration have a certain type of dispute and whose sole duty is to resolve that dispute—is an officer); *In re Grand Jury Investigation*, 916 F.3d 1047, 1052–53 (D.C. Cir. 2019) (holding that a special counsel is an inferior officer). In short, an officer must occupy a position that is "continuing," and the Court has held that a temporary position, like a special prosecutor, can satisfy this requirement.[2]

Although *Morrison* made clear that a temporary position can be an office, it did not directly address the "continuing position" requirement. Nor has the Supreme Court explained how to determine what constitutes a sufficiently "continuing position." *See, e.g.*, *Freytag v. Comm'r*, 501 U.S. 868, 881 (1991) (acknowledging the "continuing position" requirement without elaborating); *Lucia*, 138 S. Ct. at 2051–53 (same). We thus look to *Germaine* and *Auffmordt*, as well as relevant authorities preceding those cases, for guidance on how to determine

---

[2] *See* Jennifer L. Mascott, *Who Are "Officers of the United States"?*, 70 Stan. L. Rev. 443, 534 (2018) (explaining that although the historical meaning of "officer" included the idea of "*ongoing* duties," "one did not necessarily need to be *continuously* employed or remunerated to qualify as an officer. . . . A number of the individuals receiving fees for services performed or for each day worked were considered officers by the First Congress.").

whether a particular temporary position is sufficiently "continuing" to constitute an office. These early cases generally discuss three factors that are helpful to consider in determining whether a temporary position is an office: (1) the position is not personal to a particular individual; (2) the position is not transient or fleeting; and (3) the duties of the position are more than incidental. *See Officers of the United States Within the Meaning of the Appointments Clause*, 31 Op. O.L.C. 73, 112–13 (2007). We apply these factors to conclude that the special prosecutors here are officers.

First, to qualify as an office, the position must not depend on the identity of the person occupying it, and the duties should "continue, though the person be changed."[3] *United States v. Maurice*, 26 F. Cas. 1211, 1214 (C.C.D. Va. 1823); *see United States v. Hartwell*, 73 U.S. (6 Wall.) 385, 393 (1867) ("Vacating the office of his superior would not have affected the tenure of his place."). By contrast, "[a] man may certainly be employed under a contract, express or implied, to do an act, or perform a service, without becoming an officer" because the duties under the

---

[3] *See* James A. Heilpern, *Temporary Officers*, 26 Geo. Mason L. Rev. 753, 771 (2019) ("[A]t the time of the Founding, common law had defined the term *office* as 'an *institution* distinct from the person holding it.' An office was said to be continuous whenever it was 'capable of persisting beyond an individual's incumbency.'" (brackets omitted) (quoting Edward S. Corwin, *The President: Office and Powers, 1787-1984*, at 70 (4th ed. 1957))).

contract are owed by that individual, who cannot simply be replaced by another. *Maurice*, 26 F. Cas. at 1214. Here, the special prosecutor positions are not specific to the attorneys appointed to prosecute Donziger. Indeed, the prosecution was originally referred to the U.S. Attorney for the Southern District of New York, who declined due to unavailability of resources. Moreover, the individuals appointed as special prosecutors could be replaced without the duties of the positions terminating.

Second, the position must not be transient or fleeting. *See Auffmordt*, 137 U.S. at 326–27 (holding that a merchant appraiser is not an officer because he had no "employment which has any duration as to time"); *see also In re Oaths*, 20 Johns. 492, 493 (N.Y. 1823) ("Lexicographers generally define 'office' to mean '*public employment*;' and I apprehend its legal meaning to be an employment on behalf of the government, in any station or public trust, not merely *transient*, *occasional* or *incidental*."); *State v. Kennon*, 7 Ohio St. 546, 556 (1857) (contrasting duties that are "transient, occasional, or incidental" with those that are "durable, permanent, and continuous").[4] Here, the special prosecutors were appointed in July 2019 and have

---

[4] Although *In re Oaths* and *Kennon* were state court cases, they reflect a shared understanding of the characteristics of an office discussed in the few federal cases that addressed the issue. *See also, e.g., In re Hathaway*, 71 N.Y. 238, 243–44 (1877); *Eliason v. Coleman*, 86 N.C. 235, 241 (1882).

already served for nearly three years. Although the special prosecutors' duties terminate upon performance, the positions are not transient or fleeting.

Third, the duties of the position must be more than incidental to the regular operations of government.[5] *See Sheboygan County v. Parker*, 70 U.S. (3 Wall.) 93, 96 (1865) (stating that the occupant of a position was not an officer because he did not exercise "continuously, and as a part of the regular and permanent administration of the government, any important public powers, trusts, or duties" (quoting *Kennon*, 7 Ohio St. at 562–63)); *see also Kennon*, 7 Ohio St. at 556 (describing an office as a "public duty, charge, and trust, conferred by a public authority, for public purposes of a very weighty and important character" and "not merely transient, occasional, or incidental" (cleaned up)). Here, the special prosecutors' duties are more than incidental to regular government operations because prosecution generally is a core power of government and prosecution of contempt specifically "vindicate[s] the authority of the court." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994) (citation omitted).

---

[5] Although this factor is not relevant to the duration of the office, its consideration is necessary to ensure against evasion of the Appointments Clause through the creation of temporary positions with the same powers as officers. *See* 31 Op. O.L.C. at 113.

## 2. Special Prosecutors Are Analogous to Independent Counsel

In light of the foregoing, we conclude that the special prosecutor position here is analogous to the independent counsel position in *Morrison*. First, the duties of the special prosecutor and independent counsel extend beyond the person. *See* 28 U.S.C. § 593(e) ("If a vacancy in office arises by reason of the resignation, death, or removal of an independent counsel, the division of the court shall appoint an independent counsel to complete the work."). Second, both positions last for an indefinite period of time, possibly years, and thus neither position is transient or fleeting. *See id.* § 596(b) (the office of independent counsel terminates when the investigations and prosecutions "within the prosecutorial jurisdiction" of the independent counsel "have been completed" or "substantially completed"). Third, both positions exercise federal prosecutorial power.[6] *See id.* § 594(a) (independent counsel shall have "full power and independent authority to exercise all investigative and prosecutorial functions and powers of the Department of Justice [and] the Attorney General"). Although the independent counsel exercised greater authority than a special prosecutor, such as initiating

[6] The appointment order in this case grants the special prosecutors "the same power to investigate, gather evidence and present it to the Court as could any other government prosecutor." App'x at 59.

14

prosecutions and prosecuting a wider range of crimes, *see id.* §§ 593(b)(3), 594(a)(9), these differences go to the degree, not the nature, of the authority.

By contrast, the special prosecutor is less like the civil surgeon in *Germaine* or the merchant appraiser in *Auffmordt*, which addressed positions that lacked "any duration as to time" and duties that were narrowly limited, specialized, or insignificant. *Auffmordt*, 137 U.S. at 327. The civil surgeon's sole duty was to make "examination of pensioners" "when called on by the Commissioner of Pensions in some special case." *Germaine*, 99 U.S. at 508, 512 (citation omitted); *see also id.* at 512 ("If Congress had passed a law requiring the commissioner to appoint a man to furnish each agency with fuel at a price per ton fixed by law . . . he would have as much claim to be an officer of the United States as the surgeons appointed under this statute."). And the merchant appraiser's sole duty was to "examine and appraise" merchandise "upon the request of the importer for a reappraisal." *Auffmordt*, 137 U.S. at 312, 326; *see also id.* at 327 (merchant appraiser is "an expert assistant . . . selected for the particular case . . . [and] for his special knowledge in regard to the character and value of the particular goods in question").

The fact that the special prosecutor is generally appointed for a "particular case" does not negate the differences between special prosecutors, on the one

hand, and civil surgeons and merchant appraisers, on the other.[7] *Id.* at 327. In contrast to the discrete, short-lived tasks civil surgeons and merchant appraisers undertake for any given case, the special prosecutor investigates and prosecutes a criminal case, which can last for years and encompass a wide array of assignments, such as executing search warrants, issuing subpoenas, granting immunity, entering into plea bargains, and representing the government in court both at trial and on appeal. Also unlike civil surgeons and merchant appraisers, the special prosecutor wields "the power to employ the full machinery of the state" to vindicate the authority of the judiciary, which may include the awesome responsibility of depriving an individual of his liberty. *Young*, 481 U.S. at 814.

In sum, we hold that special prosecutors are officers under the Appointments Clause because they are analogous to independent counsel: The duties of the position extend beyond the person; although not permanent, the

---

[7] Although in this case the special prosecutors were charged with the prosecution of only a single defendant, special prosecutors could be appointed to investigate and prosecute multiple defendants for contempt arising from the same court orders. For instance, the special prosecutors in *Young* prosecuted five defendants—two pled guilty, one was convicted of criminal contempt, and two were convicted of aiding and abetting that contempt. 481 U.S. at 790 n.1, 792. Although in *Young* all defendants were prosecuted under the same case, a different multi-defendant prosecution could involve multiple cases. *See* Fed. R. Crim. P. 14(a) (allowing the court to sever defendants for trial where joinder "appears to prejudice a defendant or the government").

16

position is continuing and may last for years; and the purpose of the position is to exercise federal prosecutorial power.

B.    Special Prosecutors Are Subject to Supervision by the Attorney General

Having determined that special prosecutors are officers, we turn to Donziger's first argument that his prosecution violated the Appointments Clause because the special prosecutors were inferior officers who lacked supervision by a principal officer. As an initial matter, it is not clear that Donziger's argument regarding supervision of the special prosecutors was timely under Federal Rule of Criminal Procedure 12(b)(3)(A).[8] But even assuming it was timely, it fails on the merits.

The Appointments Clause differentiates between principal officers—who must be appointed by the President and confirmed by the Senate—and inferior officers, who may be appointed by "the President alone," "the Courts of Law," or

_____

[8] In its findings of fact and conclusions of law, the district court determined that Donziger forfeited his supervision argument because he did not comply with Federal Rule of Criminal Procedure 12(b)(3)(A), which states that a "defect in instituting the prosecution" "must be raised by pretrial motion if the basis for the motion is then reasonably available." Donziger's supervision argument was apparent as soon as the special prosecutors were appointed in July 2019, but he did not raise it before the February 27, 2020 deadline for filing pre-trial motions, waiting instead until the first day of trial. We note, however, that the government may have itself forfeited the timeliness argument by failing to raise it in response to Donziger's motions to dismiss. *See Eberhart v. United States*, 546 U.S. 12, 18 (2005) ("[F]ailure to object to untimely submissions entails forfeiture of the objection.").

"the Heads of Departments," as Congress may provide by law. *Edmond*, 520 U.S. at 660 (quoting U.S. Const. art. II, § 2, cl. 2). Inferior officers "are officers whose work is directed and supervised at some level" by principal officers. *Id.* at 663.

The special prosecutors here are inferior officers appointed by "the Courts of Law" under Rule 42, *see infra* Section II.C, and subject to the supervision of the Attorney General of the United States, a principal officer. The statutory scheme in Chapter 31 of Title 28 gives the Attorney General broad authority to conduct and to supervise all litigation involving the United States. *See* 28 U.S.C. §§ 516, 517, 518, 519. This includes the authority to supervise—and if necessary, to remove—inferior officers.

As relevant here, section 518(b) states that "[w]hen the Attorney General considers it in the interests of the United States, he may personally conduct and argue any case . . . in which the United States is interested, or he may direct . . . any officer of the Department of Justice to do so." This section gives the Attorney General the authority to replace special prosecutors, which is "a powerful tool for control of an inferior," *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477,

510 (2010) (cleaned up), and to take control over contempt prosecutions.[9] *See Booth v. Fletcher*, 101 F.2d 676, 681–82 (D.C. Cir. 1938) (explaining that Rev. Stat. § 359, a predecessor to 28 U.S.C. § 518(b), "gives [the Attorney General] broad, general powers intended to safeguard the interests of the United States in any case . . . . The Attorney General occupies no subordinate position when he elects to enter such a proceeding . . . . On the contrary, the law contemplates that—consistent with the proper interests of private litigants and, so far as concerns the interests of the United States—he shall have full control of the prosecution or defense of the case"). Indeed, at oral argument, both the special prosecutors and the DOJ acknowledged that the Attorney General could replace the special prosecutors. *See* Oral Argument at 36:37–37:03, 47:03–49:47, 55:17–55:33.

In addition, section 519 states that "[e]xcept as otherwise authorized by law, the Attorney General shall supervise all litigation to which the United States . . . is a party, and shall direct all United States attorneys [and] assistant United States

---

[9] This power is reinforced by the Attorney General's authority to conduct and supervise litigation in which the United States is a party, which necessarily encompasses the authority to decide which inferior officer represents the United States in court and the ability to replace or remove inferior officers reporting to him. *See* 28 U.S.C. § 516 ("[T]he conduct of litigation in which the United States . . . is a party . . . is reserved to officers of the Department of Justice, under the direction of the Attorney General."); *id.* § 519 ("[T]he Attorney General . . . shall direct all United States attorneys [and] assistant United States attorneys . . . in the discharge of their respective duties."); *id.* § 542(b) ("Each assistant United States attorney is subject to removal by the Attorney General.").

attorneys . . . in the discharge of their respective duties." This section is comprised of two separate grants of authority to the Attorney General: (1) to "supervise all litigation to which the United States . . . is a party" and (2) to "direct all United States attorneys [and] assistant United States attorneys." *Id.* The first grant of authority is independent of the second, and thus the Attorney General's authority to supervise "all litigation to which the United States . . . is a party" does not depend on whether the attorney representing the United States is a United States attorney or an assistant United States attorney—indeed, it does not depend on the identity of the attorney at all. *Id.* This section thus gives the Attorney General the authority to supervise all criminal contempt prosecutions.[10] *See Young*, 481 U.S. at

---

[10] The dissent asserts that *Providence Journal* held that "*Young* is incompatible with direction of the contempt proceeding by the Attorney General." Dissent at 15. That is incorrect. *Providence Journal* instead reconciled the requirement in 28 U.S.C. § 516 and § 547 that litigation involving the United States must be conducted by a "Government attorney" with *Young*'s holding that a "private attorney" could prosecute a criminal contempt charge. *Providence J. Co.*, 485 U.S. at 704–05. In doing so, it relied on the "[e]xcept as otherwise authorized by law" proviso in both sections. *Id.* Even assuming section 516 does not apply to judicially initiated contempt proceedings, sections 518(b) and 519 are not implicated by *Providence Journal*. As *Providence Journal* noted, "by way of vivid contrast" to sections 516 and 547, section 518 does not contain the "[e]xcept as otherwise authorized by law" proviso. *Id.* at 705. And although section 519 does contain the proviso, contempt proceedings fall within that proviso only to the limited extent that the Attorney General does not initiate the contempt prosecution or choose the special prosecutor. In all other respects, they do not conflict with or require an exception to the Attorney General's authority to supervise contempt prosecutions.

804 ("Private attorneys appointed to prosecute a criminal contempt action represent the United States.").

In light of the Attorney General's broad statutory authority to supervise all litigation involving the United States, it is clear that the special prosecutors are subject to the supervision of the Attorney General. Whether they were in fact supervised is beside the point. A principal officer "need not review every decision of the [inferior officer]. What matters is that the [principal officer] have the discretion to review decisions rendered by [the inferior officer]." *United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1988 (2021). The Constitution does not mandate a minimum level of supervisory activity over the work of inferior officers; rather, it requires as a matter of structural authority that inferior officers be subject to the supervision and direction of principal officers.

We thus reject Donziger's argument that the special prosecutors were unsupervised as a matter of fact.[11] He points to (1) an email from the DOJ before trial declining to intervene in the prosecution and (2) the DOJ's filing of a separate amicus brief in this appeal rather than directing the special prosecutors to take the

[11] Donziger concedes that the Attorney General has statutory authority to exercise direction over this case. Reply Br. 24.

DOJ's position.[12]  Neither changes the fact that the Attorney General had statutory authority to supervise the special prosecutors, bringing them under the supervision of a principal officer.

Nor does the Attorney General's statutory authority to supervise special prosecutors abrogate the judicial power described in *Young* to punish contempt. The only judicial powers described in *Young* are the court's authority to *initiate* prosecution and to appoint a special prosecutor if the executive declines to prosecute—it does not extend the judicial power beyond that point.  *See, e.g.*, *Young*, 481 U.S. at 795 ("[T]he *initiation* of contempt proceedings to punish disobedience to court orders is a part of the judicial function." (emphasis added)); *id.* at 800–01 ("[C]ourts have long had, and must continue to have, the authority to appoint private attorneys to *initiate* such proceedings when the need arises." (emphasis added)).  Indeed, *Young* recognized that once the prosecution commenced, the special prosecutor would make critical decisions "outside the

---

[12] Donziger also argues that the special prosecutors denied that they were subject to supervision in their opposition to Donziger's post-trial motion to dismiss.  As the district court correctly noted, although the special prosecutors made a misguided legal argument, it was "in no way whatsoever" "a dispositive admission that [the special prosecutors] were not subject to supervision and direction prior to trial."  Sp. App'x at 259 n.12 (cleaned up).  In any event, even if the special prosecutors had denied that they were subject to supervision, that would still not vitiate the Attorney General's statutory authority to supervise special prosecutors.

supervision of the court," such as who should be targets of investigation, who should be granted immunity, and whether to enter into plea bargains.[13] *Id.* at 807.

The Attorney General cannot prevent a court from initiating a contempt prosecution or appointing a special prosecutor—his authority to supervise special prosecutors starts only after the court has exercised these powers. The fact that

---

[13] The dissent asserts based on certain language in *Young* that courts must have "an independent means to prosecute criminal contempt" that cannot be interfered with by the executive. Dissent at 13. But *Young* did not expand the judicial power beyond initiation and appointment. For example, although the Court observed that "the attributes which inhere in [the contempt] power and are inseparable from it can neither be abrogated nor rendered practically inoperative," *Young*, 481 U.S. at 799 (citation omitted), the Court concluded in the very next sentence that prosecutions of contempt both in and out of court "proceed at the *instigation* of the court." *Id.* (emphasis added). Similarly, after saying "[i]f the Judiciary were completely dependent on the Executive Branch to redress direct affronts to its authority, it would be powerless to protect itself if that Branch declined prosecution," the Court explains in the following sentence that "[t]he logic of this rationale" is that a court should appoint a special prosecutor only if the appropriate executive agency declines to prosecute. *Id.* at 801. The Court also cabined the scope of its broad statement about inter-branch dependency in an earlier portion of the opinion: "Courts cannot be at the mercy of another Branch in deciding whether such proceedings should be *initiated*. The *ability to appoint* a private attorney to prosecute a contempt action satisfies the need for an independent means of self-protection." *Id.* at 796 (emphases added).

The dissent states that the judicial power described by *Young* is "ineffectual" and "strange" because it is useful only "when the executive branch actually *wants* to prosecute the contempt but declines to do so solely for lack of resources." Dissent at 13. But this understates the power blessed by the Court in *Young*. The ability to initiate the process and to appoint a prosecutor gives the judiciary some ability to protect its interests. Although the executive could terminate a contempt prosecution initiated by the judiciary, that would entail greater political accountability than a decision not to prosecute in the first place, and the judiciary could further respond by initiating a new prosecution and appointing another special prosecutor. *See* Oral Argument at 49:30–49:50, 57:00–58:20. Although this would not necessarily ensure prosecution of a contemnor, it would provide a level of political accountability sufficient to fulfill the rationale of *Young*.

the Attorney General has the power to direct and even remove special prosecutors does not negate the court's power to appoint them, and the fact that he has authority to take control of and even to terminate the contempt prosecution does not negate the court's authority to initiate one.

We thus reject Donziger's first Appointments Clause argument because the Attorney General has the statutory authority to supervise the special prosecutors.

C.    Donziger's Rule 42(a) Challenge Does Not Satisfy Plain-Error Review

For the first time on appeal, Donziger argues that his prosecution was unconstitutional because the special prosecutors were appointed under Federal Rule of Criminal Procedure 42(a), which did not satisfy the Appointments Clause requirement that "Congress . . . by Law vest the Appointment." U.S. Const. art. II, § 2, cl. 2. We review for plain error because Donziger did not make this argument below.[14] *See United States v. Eldridge*, 2 F.4th 27, 36 (2d Cir. 2021); *see also Yakus v.*

---

[14] The dissent asserts that Donziger's related, but distinct, Appointments Clause argument that the special prosecutors were unsupervised inferior officers in his motions to dismiss sufficiently raised the Rule 42(a) issue for review. *See* Dissent at 4–5. But that is a stretch. Donziger never argued below that Rule 42(a) is unconstitutional. In fact, he conceded this failure at oral argument. *See* Oral Argument at 19:37–43 ("We did not raise [the Rule 42 argument] specifically."); *see also In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132–33 (2d Cir. 2008) (concluding that an argument made below merely "resembling" the one presented on appeal was not sufficient to preserve the issue). The dissent also suggests that Donziger had no reason to raise the Rule 42(a) argument below until the district court rejected his supervision argument. *See* Dissent at 5–6. We disagree. First, Donziger never argued that the special prosecutors were

*United States*, 321 U.S. 414, 444 (1944) ("No procedural principle is more familiar . . . than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it."); *Freytag*, 501 U.S. at 893–94 (Scalia, *J.*, concurring) ("Appointments Clause claims, and other structural constitutional claims, have no special entitlement to review. A party forfeits the right to advance on appeal a nonjurisdictional claim, structural or otherwise, that he fails to raise at trial.").

"[T]he defendant has the burden of establishing each of the four requirements for plain-error relief," one of which is that the "error must be plain." *Greer v. United States*, 141 S. Ct. 2090, 2096–97 (2021). An error is plain if it is "clear" or "obvious," *United States v. Olano*, 507 U.S. 725, 734 (1993) (citation omitted), or "if the ruling was contrary to law that was clearly established by the time of the appeal," *United States v. Polouizzi*, 564 F.3d 142, 156 (2d Cir. 2009) (citation omitted).

There is no plain error here. First, it is not clear that the phrase "Congress . . . by Law" requires bicameral approval and presentment, and that it does not

principal officers who should have been appointed by the President and confirmed by the Senate—his position throughout the case has been that they are inferior officers. We thus see no reason why he couldn't have argued below that the special prosecutors were inferior officers who were not only inadequately supervised, but also improperly appointed under Rule 42(a). Second, after the district court rejected Donziger's supervision argument, he could have—but didn't—raise this Rule 42(a) argument in his motion for a new trial.

encompass Rule 42, which was enacted under the Rules Enabling Act, which gives Congress an opportunity to modify or reject rules before their enactment. *See* 28 U.S.C. § 2074.

Second, even if we might ultimately conclude that the appointment of a special prosecutor under Rule 42 violates the Appointments Clause, any error by the district court would not be "clear" or "obvious" in light of Supreme Court precedent. *Young* held that "courts possess inherent authority to initiate contempt proceedings for disobedience to their orders, authority which necessarily encompasses the ability to appoint a private attorney to prosecute the contempt." 481 U.S. at 793. Even if we were to agree that *Young* is in some tension with the Court's more recent Appointments Clause and separation-of-powers jurisprudence, the district court did not plainly err by following directly applicable Supreme Court precedent. *See Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("[I]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." (citation omitted)).

The dissent contends that the district court plainly erred because prosecution is solely an executive function, and "the 'executive Power'—all of it—is 'vested in a President.'" *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2191 (2020) (citation omitted). But the dissent never seriously argues, nor could it, that the judicial appointment of a prosecutor would violate the separation of powers. *See* U.S. Const. art. II, § 2, cl. 2 ("Congress may by Law vest the Appointment of such inferior Officers . . . in the Courts of Law."); *see also* 28 U.S.C. § 546(d) (allowing the district court to appoint an interim United States attorney in certain circumstances). And in Donziger's appeal, it is precisely the appointment of special prosecutors that is at issue.

Instead, the dissent focuses almost exclusively on the initiation of the prosecution by the district court. But Donziger does not argue on appeal that his conviction should be overturned because the district court's initiation of his prosecution violated separation of powers. That argument would conflict not only with *Young*, but also with well-established precedent recognizing the judiciary's ability to punish contempts. *See Michaelson v. United States*, 266 U.S. 42, 65 (1924) ("That the power to punish for contempts is inherent in all courts, has been many times decided and may be regarded as settled law.").

The dissent would hold that Rule 42 is unconstitutional, as are all judicially-initiated contempt prosecutions because they violate separation-of-powers principles.[15] *See* Dissent at 16–18. Supreme Court precedent does not support that extraordinary conclusion. The dissent accuses us of not "faithfully apply[ing] *Young*," Dissent at 16, but what is clear from that case is that the Supreme Court explicitly rejected the dissent's position. *See Young*, 481 U.S. at 797–801 (rejecting petitioners' argument that out-of-court contempt prosecutions may be initiated only by the executive branch).

The district court reasonably relied on *Young*, and we conclude that it was not plain error to appoint the special prosecutors under Rule 42(a).

---

[15] The dissent distinguishes between in-court contempts that interfere with the judicial process and can be punished summarily because they occur in the presence of the judge and out-of-court contempts involving violations of judicial orders and judgments that require adversarial proceedings. *See* Dissent at 17 n.10. *Young* concluded that "while the prosecution of in-court and out-of-court contempts must proceed in a different manner, they both proceed at the instigation of the court" and both are inherently part of the judicial power. *Young*, 481 U.S. at 799; *see also id.* at 797–801; *Ex parte Robinson*, 86 U.S. (19 Wall.) 505, 510 (1873) ("The power to punish for contempts is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, *and* to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice." (emphasis added)); *Bessette v. W.B. Conkey Co.*, 194 U.S. 324, 333 (1904) (judicial power to punish contempt "has been uniformly held to be necessary to the protection of the court from insults and oppressions while in the ordinary exercise of its duties, *and* to enable it to enforce its judgments and orders necessary to the due administration of law and the protection of the rights of suitors" (emphasis added)).

28

D.      The District Court Did Not Abuse Its Discretion by Initiating the Prosecution

Finally, Donziger argues that by initiating a criminal contempt prosecution against him, the district court failed to adhere to the "principle that only the least possible power adequate to the end proposed should be used in contempt cases," and he appeals to our "supervisory authority" to overturn the conviction on that basis.[16] *Young*, 481 U.S. at 801, 808–09 (cleaned up). We review the district court's decision to initiate contempt proceedings under a heightened abuse-of-discretion standard. *See Doral Produce Corp. v. Paul Steinberg Assoc., Inc.*, 347 F.3d 36, 38 (2d Cir. 2003) (holding that a judge's decision to issue summary criminal contempt orders are "reviewed on appeal for abuse of discretion, but because of the formidable and potentially harmful nature of the contempt power, this review is more rigorous than in other contexts" (cleaned up)); *see also* 18 U.S.C. § 401 ("A court of the United States shall have power to punish by fine or imprisonment, or both, *at its discretion*, such contempt of its authority." (emphasis added)).

First, Donziger does not deny that he repeatedly refused to obey court orders over a period of years. The district court's findings of fact and conclusions

---

[16] We note the Supreme Court's recent observation that "[s]ome jurists have questioned [the Supreme Court's] supervisory authority over lower courts." *United States v. Tsarnaev*, 142 S. Ct. 1024, 1035 n.1 (2022); *see also id*. at 1041 (Barrett, *J.*, concurring) (expressing "skepticism that the courts of appeals possess such supervisory power").

of law describe Donziger's behavior as an "extensive and continuous laundry list of past violations of [the district court's] orders" and as "years of noncompliance." Sp. App'x at 243–44 (emphasis omitted).

Second, the district court did not abuse its discretion by punishing Donziger for his past disobedience of court orders, even if it had since been cured. Criminal contempt punishes "retrospectively for a completed act of disobedience, such that the contemnor cannot avoid or abbreviate the confinement through later compliance." *Bagwell*, 512 U.S. at 828–29 (cleaned up). Unlike civil contempt, which is aimed at "compel[ling] future compliance with a court order" and is "remedial[] and for the benefit of the complainant," criminal contempt is "punitive" and meant to "vindicate the authority of the court." *Id.* at 827–28. Here, "the end proposed" was not compliance with court orders but punishment for past disobedience and vindication of the court's authority. It is therefore beside the point that Donziger eventually complied with most of the court orders underlying his criminal contempt conviction.

Third, it is not an abuse of discretion for a court to punish a contemnor who disobeys court orders to obtain appellate review. *See Del Carmen Montan v. Am. Airlines, Inc.*, 490 F.3d 99, 104 (2d Cir. 2007) ("[T]he remedy of the party witness

30

wishing to appeal [a court's decision to compel compliance with a subpoena or deny a motion to quash a subpoena] is to refuse to answer and subject himself to criminal contempt." (citation omitted)).

In any event, Donziger's assertion that he disobeyed the court's discovery orders to appeal them is dubious. When he appealed the civil contempt orders and had the opportunity to challenge two of the three discovery orders that were the basis for his criminal contempt conviction, he failed to do so—he challenged only one contempt finding, which was not part of his criminal conviction. *See Chevron Corp. v. Donziger*, 990 F.3d 191, 206 (2d Cir. 2021).

We thus conclude that the district court did not abuse its discretion by initiating a contempt proceeding against Donziger.[17]

## III. CONCLUSION

For the reasons set forth above, the district court's judgment is AFFIRMED.

---

[17] Donziger mentions in passing various other objections to his prosecution—namely, he was denied his right to a grand jury and a petit jury, Judge Kaplan picked Judge Preska to preside over the criminal case without recusing himself, and the private prosecutor had ties to Chevron. These arguments were waived because they were "not sufficiently argued in the briefs," and we decline to address them. *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998).

31

MENASHI, *Circuit Judge*, dissenting:

When the U.S. District Court for the Southern District of New York requested that the U.S. Attorney prosecute Steven Donziger for contempt, the U.S. Attorney "respectfully decline[d]." App'x 59. In response to that exercise of prosecutorial discretion, the district court appointed three private attorneys "to prosecute Steven Donziger on the charges of criminal contempt." *Id.* These judicially appointed prosecutors eventually secured a conviction against Donziger and a sentence of six months' imprisonment.

This is not how defendants are prosecuted in a system of separated powers. In our constitutional framework, "the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case." *United States v. Nixon*, 418 U.S. 683, 693 (1974). In this case, however, the district court made that decision by appointing its own prosecutors. Moreover, any officer exercising the executive power—as all parties now acknowledge the special prosecutors to be—must be appointed consistent with the Appointments Clause. That clause requires appointment by the President and confirmation by the Senate unless "Congress … by Law" vests the appointment of certain inferior officers in the courts, the heads of the departments, or the President alone. U.S. CONST. art. II, § 2, cl. 2. In this case, the district court appointed the special prosecutors, but Congress never authorized it to do so.

Thirty-five years ago, the Supreme Court suggested that Article III created an exception to normal separation-of-powers principles when a district court appoints private lawyers as special prosecutors for criminal contempt proceedings. In *Young v. United*

*States ex rel. Vuitton et Fils S.A.*, the Court said that the power to initiate a prosecution followed from the judiciary's "inherent power of self-protection," so that a court would not be "completely dependent on the Executive Branch to redress direct affronts to its authority." 481 U.S. 787, 801 (1987). For that reason, *Young* said, the power to initiate "contempt proceedings to punish disobedience to court orders" was "a part of the judicial function." *Id.* at 795.

No one involved in this case has treated the prosecution of Donziger as an exercise of inherent judicial authority. Every court and every party in these proceedings agrees that the special prosecutors exercised executive power. The court acknowledges that special prosecutors are officers of the United States and "exercise the sovereign power of the United States." *Ante* at 8-9 (internal quotation marks omitted). The special prosecutors themselves admit that they exercise a "form of executive power."[1] And Donziger, the special prosecutors, and the court all conclude that the prosecution could have been ended by the Attorney General. *See ante* at 23-24; Reply Br. 24; Appellee's Br. 38.

Despite this agreement that, as the court understatedly puts it, "*Young* is in some tension with the Court's more recent Appointments Clause and separation-of-powers jurisprudence," *ante* at 26, the court attempts to reconcile that jurisprudence with *Young*. According to the court, *Young* held that the judiciary has the inherent power only to *initiate* a prosecution and left to the executive branch the power to terminate that prosecution at any time. *Id.* at 22-24. In other words, although *Young* purported to provide the judiciary a "means to vindicate its own authority without complete dependence on other

---

[1] Oral Argument Audio Recording at 38:00.

Branches," all it did was authorize a district court to appoint a prosecutor who could be immediately fired by the executive branch. *Young*, 481 U.S. at 796. That is not the "power of self-protection" the *Young* Court had in mind. *Id.* at 801.

I agree with the part of the court's opinion holding that even a judicially appointed special prosecutor is an executive officer performing an executive function. For that reason, I would acknowledge that the appointment of such a prosecutor cannot be justified by inherent judicial authority but must be consistent with the Appointments Clause. Because the appointments in this case were not made in compliance with the Appointments Clause, I would hold that the appointments of the special prosecutors—and the subsequent prosecution, conviction, and sentencing of Donziger—are void. I would reverse the judgment of the district court and vacate Donziger's conviction.

Prosecution is an aspect of the executive power, and the executive power, "all of it," belongs to the executive branch. *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2191 (2020). The district court exercised that power in this case, and therefore its judgment cannot stand. Accordingly, I dissent.

**I**

The court relies on the plain error doctrine to avoid squarely addressing whether the prosecution of Donziger was unconstitutional. According to the court, Donziger failed to argue before the district court that the appointments of the prosecutors were unconstitutional, and therefore plain error review applies. Thus, even though the prosecution *might* have been unconstitutional, because it

3

was not *plainly* so, the court holds that we must affirm Donziger's conviction. I disagree.

## A

First, plain error review does not apply because Donziger raised his challenge to the appointments of the special prosecutors repeatedly before the district court. In his pretrial motion to dismiss the contempt charge, Donziger argued that "judges invoking criminal contempt must exercise utmost restraint," that Justice Scalia "strenuously argued that federal judges themselves have no … power to appoint an attorney to conduct contempt prosecutions," and that "[t]he circumstances of Steven Donziger's criminal case validate … Justice Scalia's[] … concerns about abuse of the contempt power." Pretrial Motion to Dismiss at 6-7, *United States v. Donziger*, No. 19-CR-561, 2021 WL 3141893 (S.D.N.Y. July 26, 2021), ECF No. 60. During the trial, Donziger filed another motion to dismiss challenging the appointments of the special prosecutors because the prosecutors were "acting without any acknowledged [e]xecutive branch supervisory authority" and yet "have not been appointed by the President with the advice and consent of the Senate." Motion to Dismiss at 3, *Donziger*, 2021 WL 3141893, ECF No. 302. After the trial, Donziger again sought dismissal of the case because "the appointment of Ms. Glavin," the lead special prosecutor, "was unconstitutional." Motion to Dismiss at 1, *Donziger*, 2021 WL 3141893, ECF No. 330. The district court responded to Donziger's arguments by holding that the appointments of the special prosecutors pursuant to Federal Rule of

4

Criminal Procedure 42 was consistent with the Appointments Clause.[2]

Donziger was so persistent in raising his Appointments Clause challenge that he exasperated the district court. *See, e.g.*, *Donziger*, 2021 WL 3141893, at *53 ("Undeterred, Mr. Donziger filed a second post-trial letter motion to dismiss the contempt charges on Appointments Clause grounds."). Nevertheless, the court determines that he "did not make this argument below." *Ante* at 24. According to the court, it was not enough for Donziger to preserve the issue to contend that the appointments of the special prosecutors violated the Appointments Clause. Instead, Donziger needed specifically to argue that Rule 42 "did not satisfy the Appointments Clause requirement that 'Congress … by law vest the Appointment.'" *Id.* at 24 (quoting U.S. CONST. art. II, § 2, cl. 2). But Donziger had no reason to frame his Appointments Clause challenge in this way before the district court. Donziger argued to the district court that the special prosecutor was unsupervised and therefore was *not* acting as an inferior officer who could assume office without appointment by the President and confirmation by the Senate. Only after the district court rejected that argument—and held that the special prosecutor was an inferior officer and could properly be appointed by a district court pursuant to Rule 42, *see supra* note 2—did it make sense for Donziger to present

---

[2] *See Donziger*, 2021 WL 3141893, at *54 ("Unlike principal officers, inferior officers Congress may allow to be appointed by the President alone, by the heads of departments, or by the Judiciary. That is precisely what happened in this case. Federal Rule of Criminal Procedure 42 ('Rule 42') authorized—in fact, mandated—Judge Kaplan to appoint an attorney to prosecute the criminal contempt charges against Mr. Donziger.") (internal quotation marks, alteration, and footnote omitted).

the argument that Rule 42 does not authorize a district court to appoint an inferior officer under the Appointments Clause.[3]

The court recognizes that the district court's holding with respect to Rule 42 is questionable. *See ante* at 26 (noting that "we might ultimately conclude that the appointment of a special prosecutor under Rule 42 violates the Appointments Clause"). But the court refuses to consider Donziger's challenge to that holding on the merits because Donziger failed to make a specific argument against that holding before the holding was ever issued.

That does not make sense. The "well-established general rule" is that "an appellate court will not consider an issue raised for the first time on appeal." *Greene v. United States*, 13 F.3d 577, 586 (2d Cir. 1994). In this case, Donziger repeatedly raised the issue of the Appointments Clause before the district court, and the district court addressed it. I would hold that Donziger thereby preserved the issue and that we should consider his appeal on the merits. Because "this appeal turns on a pure question of law," the standard of review is *de novo* rather than plain error. *Am. Int'l Grp. v. Bank of Am. Corp.*, 712 F.3d 775, 778 (2d Cir. 2013).

---

[3] The court insists that "Donziger never argued that the special prosecutors were principal officers who should have been appointed by the President and confirmed by the Senate." *Ante* at 24-25 n.14. But Donziger's argument that the special prosecutors' appointments were unconstitutional because they lacked "supervision by the Department of Justice" *was* an argument that the special prosecutors were acting as principal officers despite not having "been appointed by the President with the advice and consent of the Senate." Motion to Dismiss at 3, *Donziger*, 2021 WL 3141893, ECF No. 302.

6

**B**

Second, even if Donziger had to show plain error, I would conclude that he satisfies that standard. We find plain error when "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Nouri*, 711 F.3d 129, 138 (2d Cir. 2013) (internal quotation marks and alterations omitted). I do not understand the court to argue that the constitutional violation Donziger alleges did not affect his "substantial rights" or seriously affect the "fairness, integrity or public reputation of judicial proceedings." *Id.* It clearly did both. Donziger was sentenced to six months' imprisonment following a prosecution he claims should not have been permitted at all.

To avoid deciding whether the appointments of the special prosecutors were unconstitutional, the court holds that any error by the district court is not "plain." *Ante* at 25-26. An error is plain if it is "clear" or "obvious." *United States v. Olano*, 507 U.S. 725, 734 (1993). We do not determine the plainness of an error according to how understandable it was for the district court to have erred. Plain error is assessed "at the time of appellate consideration," *Johnson v. United States*, 520 U.S. 461, 468 (1997), and we find plain error even when the error would not have been "clear" or "obvious" before the district court at the time of its decision. *See, e.g., United States v. Balde*, 943 F.3d 73, 97 (2d Cir. 2019) (holding that the district court committed plain error based on a Supreme Court decision published after the district court's judgment).

The court maintains that the district court's alleged error is not clear enough because the district court was following *Young* when it held that the appointments were valid. In particular, the court refers to the principle that if "a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." *Ante* at 26 (quoting *Agostini v. Felton*, 521 U.S. 203, 237 (1997)). The court's application of this principle suggests not merely that the district court did not *plainly* err but that the district court did not err *at all*. If the court thinks that the *Agostini* principle requires continued adherence to *Young*, it should say so. But the court avoids saying that directly because it would contradict what the court holds in the first part of its opinion.

No court that believes what the majority says about the authority of the special prosecutors in this case could conclude that *Young* justifies their appointments. Until this case, no court of appeals had ever held that a special prosecutor was an executive officer who could nevertheless be judicially appointed consistent with the Appointments Clause. *Young* does not stand for that proposition. As Justice Scalia noted, "the power to appoint inferior federal officers" under the Appointments Clause was "irrelevant" to the Court's decision in *Young*, 481 U.S. at 815 (Scalia, J., concurring in the judgment), which rested instead on the courts' "inherent authority" under Article III, *id.* at 793 (majority opinion). Today, the court does not follow the "inherent authority" rationale of *Young* because it recognizes that doing so would be inconsistent with the Supreme Court's subsequent cases. Given that everyone in this case agrees that

8

the rationale of *Young* is untenable, reliance on that decision to excuse a violation of the Appointments Clause is plainly erroneous.

## II

According to the court, however, it was not plainly erroneous for the district court to appoint special prosecutors and initiate this prosecution following the U.S. Attorney's refusal to prosecute. Where did the district court get that power to appoint prosecutorial officers? Our government "is acknowledged by all to be one of enumerated powers," *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 405 (1819), and the only enumerated powers that could justify the appointments in this case are the appointment power under the Appointments Clause or the "judicial Power" under Article III. *See* U.S. CONST. art. II, § 2; *id.* art. III, § 1. Neither of these provisions authorizes the appointments in this case.

## A

The Appointments Clause provides that "Congress may by Law vest the Appointment of such inferior Officers, as they think proper, … in the Courts of Law." *Id.* art II, § 2. The district court relied on Rule 42 to authorize the appointments of the special prosecutors. *Donziger*, 2021 WL 3141893, at *54. The Supreme Court amended Rule 42 in 2002 pursuant to its authority under the Rules Enabling Act "to prescribe general rules of practice and procedure and rules of evidence for cases" in the federal courts. 28 U.S.C. § 2072(a); *see Bank of N.S. v. United States*, 487 U.S. 250, 255 (1988). In accordance with the Act, the Court transmitted the amended Rule to Congress before it became effective. 28 U.S.C. § 2074. Because Congress did not pass a law to prevent the Rule from taking effect, the current version of Rule 42 became operative on December 1, 2002.

Today's opinion suggests that Rule 42 might be sufficient under the Appointments Clause to vest authority to appoint special prosecutors in the courts. *See ante* at 25-26. It is not. The Appointments Clause provides not only that the appointment power must be vested "by Law"; it also tells us *who* must vest that power: "Congress." U.S. CONST. art. II, § 2.[4] As Justice Scalia observed in *Young*, Rule 42 "could not confer Article II appointment authority, since it is a Rule of court rather than an enactment of Congress." *Young*, 481 U.S. at 816 n.1 (Scalia, J., concurring in the judgment). To be sure, by operation of the Rules Enabling Act, Rule 42 is "as binding as any statute duly enacted by Congress." *Bank of N.S.*, 487 U.S. at 255. But that does not mean Rule 42 *is* a statute duly enacted by Congress. The Rules Enabling Act provides only that a rule must be submitted to Congress at least seven months before it takes effect. *See* 28 U.S.C. § 2074(a). That notification provision—under which Congress normally does nothing at all—cannot transform the courts' adoption of Rule 42 into an instance of "Congress … by Law" vesting the appointment power in the courts.

---

[4] The same clause refers to federal offices that "shall be established by Law." U.S. CONST. art. II, § 2, cl. 2. Some justices have suggested that "Law" as used there might include sources of law other than statutes. *See United States v. Mouat*, 124 U.S. 303, 308 (1888) ("[N]either by the regulations, nor by the statutes, nor by any constitutional provision, is the present claimant an officer of the navy."); *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 539 (2010) (Breyer, J., dissenting) (arguing that the Supreme Court has defined inferior officers as "those who can be said to hold an office that has been created either by regulations or by statute") (internal quotation marks and citation omitted). But when the Constitution authorizes the vesting of the appointment power, it specifies that "*Congress* may by Law" do so. U.S. CONST. art. II, § 2, cl. 2 (emphasis added). Regardless of the scope of the term "Law," it is Congress that must do the vesting.

10

Given the court's purported adherence to *Young,* it is odd that the court argues the district court might have appointed the special prosecutors pursuant to the Appointments Clause. In *Young*, the Supreme Court did not rely on Rule 42 or any statute to conclude that the appointment was authorized. According to *Young*, the version of Rule 42 in effect at that time "d[id] not provide authorization for the appointment of a private attorney." 481 U.S. at 793. Rather, the Rule "sp[oke] only to the procedure for *providing notice* of criminal contempt." *Id.* at 794. Instead of relying on Rule 42 for authorization, the Supreme Court held that the authority to appoint a special prosecutor was inherent in the judicial power under Article III. *Id.* at 793. Thus, "[t]he Court in *Young* made clear that Rule 42 is rooted in an inherent judicial power that exists independently of the Rule." *United States v. Arpaio*, 906 F.3d 800, 803 (9th Cir. 2018) (W. Fletcher, J., concurring in the denial of rehearing en banc). If the court believes that *Young* justifies the district court's decision in this case, then its discussion of the Appointments Clause is beside the point.

**B**

If the judicial appointment of a special prosecutor can be justified at all, it must be an exercise of inherent judicial authority. In *Young*, the Supreme Court held that the "inherent authority to initiate contempt proceedings for disobedience to their orders … necessarily encompasses the ability to appoint a private attorney to prosecute the contempt." 481 U.S. at 793. The Court did more than simply assert that a court may appoint a special prosecutor. It provided the rationale for that authority and limited its exercise based on that rationale.

The Court emphasized that "the rationale for the appointment authority is necessity." *Id.* at 801. In particular, "[i]f the Judiciary were completely dependent on the Executive Branch to redress direct affronts to its authority, it would be powerless to protect itself if that Branch declined prosecution." *Id.* According to *Young*, "[c]ourts cannot be at the mercy of another Branch in deciding whether [contempt] proceedings should be initiated," and "[t]he ability to appoint a private attorney to prosecute a contempt action satisfies the need for an independent means of self-protection." *Id.* at 796.

That rationale for the appointment authority informed the limits *Young* put on its exercise. According to *Young*, "[w]hile a court has the authority to initiate a prosecution for criminal contempt, its exercise of that authority must be restrained by the principle that only the least possible power adequate to the end proposed should be used in contempt cases." *Id.* at 801 (internal quotation marks and alteration omitted). Based on that principle, the Court declared that "a court ordinarily should first request the appropriate prosecuting authority to prosecute contempt actions, and should appoint a private prosecutor only if that request is denied." *Id.* This instruction aimed to "ensure[] that the court will exercise its inherent power of self-protection only as a last resort." *Id.*

The rationale of *Young* shows why it cannot justify today's decision. The court purports to apply *Young* in upholding the appointment of the special prosecutor, but at the same time the court holds that the Attorney General may, in his discretion, remove the special prosecutor and end the prosecution. If the Attorney General has that authority, it would mean—despite the *Young* Court's repeated statements that the judiciary must have "a means to vindicate its own authority without complete dependence on other

12

Branches," *id.* at 796—that the Executive Branch can terminate a contempt proceeding at will. That ability would leave the courts "at the mercy of another Branch," *id.*, and the necessity of providing the courts an independent means to prosecute criminal contempt could not justify the appointment power.

The court's conception of the district court's appointment power renders that power not only ineffectual but strange. According to *Young* and Rule 42, the district court must request that the executive branch prosecute the contempt, and only after the executive branch declines may the district court appoint its own prosecutor. But today, the court holds that if the executive branch opposes the prosecution, it can end the prosecution immediately. In other words, the district court's "means to vindicate its own authority" is completely ineffective when the executive branch does not want the contempt prosecution to proceed. *Id.* at 796. The only circumstance in which the district court's appointment power will be useful, then, is when the executive branch actually *wants* to prosecute the contempt but declines to do so solely for lack of resources.[5]

It seems to me that if the inherent judicial authority to prosecute contempt is meant to protect the independence of the courts from the

---

[5] According to the court, the district court's appointment power is a meaningful independent power even if the executive branch can immediately remove the special prosecutor because "the judiciary could … respond by initiating a new prosecution and appointing another special prosecutor." *Ante* at 23 n.13. The new special prosecutor could then be fired by the executive branch, and the judiciary could respond by appointing yet another special prosecutor, who also could be fired, and around and around we would go. It is difficult to see how such a spectacle would empower a court to "vindicate its own authority without complete dependence on other Branches." *Young*, 481 U.S. at 796.

other branches, it should be strongest when the executive branch opposes the contempt prosecution. *Young* said the power to appoint would "vindicate the jurisdiction and authority of courts to enforce orders and to punish acts of disobedience" and ensure that the judicial power does not become a "mere mockery." *Id.* (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450 (1911)). Today's decision transforms that ostensible "power of self-protection," *id.* at 801, into a subsidy for the executive branch. It allows the judicial appointment of additional executive branch prosecutors—paid out of the judiciary's budget[6]—when the U.S. Attorney's office does not want to devote its own resources to a case.[7]

The court's reliance on 28 U.S.C. § 516 further shows that it is not faithfully following *Young*. The statute provides that "[e]xcept as otherwise authorized by law, the conduct of litigation in which the United States … is a party, … is reserved to officers of the Department of Justice, under the direction of the Attorney General." 28 U.S.C. § 516.[8] But the Supreme Court has already explained that "a fair

---

[6] *See Donziger*, 2021 WL 3141893, at *51 ("[T]he Special Prosecutors are paid for their work by the federal judiciary.").

[7] Providing judiciary-funded prosecutors to the executive branch creates tension with Congress's power of the purse. Congress has sought to protect its budgetary authority over executive agencies though the Antideficiency Act, which "is designed to keep governmental agencies operating within the limits of their appropriated funds." *Nat'l Fed'n of Fed. Emps. v. Devine*, 679 F.2d 907, 913 n.11 (D.C. Cir. 1981); *see* 31 U.S.C. § 1341(a)(1)(A). According to the court, however, the special prosecutors in this case could work for the Attorney General without drawing on the funds Congress appropriated to the Department of Justice.

[8] Section 519 contains similar language. *See* 28 U.S.C. § 519 ("*Except as otherwise authorized by law*, the Attorney General shall supervise all litigation

14

reading of *Young* indicates that a federal court's inherent authority to punish disobedience and vindicate its authority is an excepted provision or authorization within the meaning of §[] 516." *United States v. Providence J. Co.*, 485 U.S. 693, 704 (1988). In other words, the Supreme Court has said that the judicially initiated criminal contempt proceedings envisioned in *Young* are *not* "reserved to officers of the Department of Justice, under the direction of the Attorney General" because those proceedings are "otherwise authorized by law." 28 U.S.C. § 516.

The Court was correct to hold in *Providence Journal* that *Young* is incompatible with direction of the contempt proceeding by the Attorney General.[9]  A court would have no authority to "punish acts of disobedience" if the contempt prosecution could proceed only at the pleasure and direction of the executive branch. *Young*, 481 U.S. at 796. The Court was clear in *Young* that "while the exercise of the contempt power is subject to reasonable regulation, the attributes which inhere in that power and are inseparable from it can neither be abrogated nor rendered *practically inoperative.*" *Id.* at 799 (internal quotation marks omitted) (emphasis added). If the court were correct that § 516 or another statute dictates that judicially appointed special prosecutors are removable at will by the executive branch, then under *Young* that statute would be unenforceable.

to which the United States … is a party, and shall direct all United States attorneys, assistant United States attorneys, and special attorneys appointed under section 543 of this title in the discharge of their respective duties.") (emphasis added).

[9]  *See also Hollingsworth v. Perry*, 570 U.S. 693, 711 (2013) (noting that "special prosecutors appointed by federal courts to pursue contempt charges" are "subject to the ultimate authority of the court that appointed them").

In sum, the court's decision today does not faithfully apply *Young* but further proves that *Young* is no longer the law. And because *Young* is the only plausible basis the court provides for the appointment of the special prosecutor, that appointment was invalid.

**III**

The violation of the Appointments Clause in this case is not a technicality. Every party and every court in these proceedings agrees that the Attorney General may remove the special prosecutor—despite the inconsistency of that conclusion with *Young*. That consensus confirms the obvious: criminal contempt prosecution is an executive function, and the special prosecutors exercise executive power.

"The prosecution of offenses against the United States is an executive function within the exclusive prerogative of the Attorney General." *United States v. Cox*, 342 F.2d 167, 190 (5th Cir. 1965) (Wisdom, J., concurring); *see also Morrison v. Olson*, 487 U.S. 654, 691 (1988) ("There is no real dispute that the functions performed by the independent counsel are 'executive' in the sense that they are law enforcement functions that typically have been undertaken by officials within the Executive Branch."). It is also undisputed where such power must reside. "Under our Constitution, the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" *Seila Law*, 140 S. Ct. at 2191 (quoting U.S. CONST. art. II, § 1, cl. 1).

That "power, in turn, generally includes the ability to remove executive officials." *Id.* at 2197. But we have consistently held for the same reason that "[t]he Executive … has the exclusive authority to decide *whether* to prosecute." *United States v. Huerta*, 878 F.2d 89, 92

16

(2d Cir. 1989) (emphasis added); *see also Pyke v. Cuomo*, 258 F.3d 107, 109 (2d Cir. 2001) ("[C]ourts grant special deference to the executive branch in the performance of the 'core' executive function of deciding whether to prosecute."). I agree that the President and the Attorney General can remove a special prosecutor because without the removal power "the President could not be held fully accountable for discharging his own responsibilities," *Free Enter. Fund*, 561 U.S. at 514, which include the executive function of prosecution. But the initiation of a prosecution is as much an executive function as the conduct of a prosecution. There is no basis for holding that the executive branch must control one but not necessarily the other.[10]

---

[10] The court draws a sharp distinction between the appointment of the special prosecutors and the initiation of the prosecution against Donziger, insisting that it is only "the appointment of special prosecutors that is at issue," *ante* at 27, as if Donziger were not challenging his prosecution. The distinction is illusory. The district court appointed the special prosecutors specifically "*to prosecute* Steven Donziger on the charges of criminal contempt of court set forth in the Order to Show Cause," as the order of appointment makes clear. App'x 59 (emphasis added). *Young* similarly did not treat the initiation of a contempt proceeding as separate from the appointment of a prosecutor. The Supreme Court has explained that *Young* "recognized that federal courts possess inherent authority to initiate contempt proceedings for disobedience to their orders, and this authority necessarily *includes* the ability to appoint a private attorney to prosecute the contempt." *Morrison*, 487 U.S. at 682 n.20 (emphasis added). At the same time, the court ignores the very real distinction between contempt proceedings that a court may initiate as an exercise of the Article III judicial power—that is, the common-law power to impose "sanctions for conduct that interfered with the orderly administration of judicial proceedings," *United States v. Dixon*, 509 U.S. 688, 694 (1993)—and the prosecution of criminal contempt charges by an executive officer, which even the court recognizes is an executive function. Federal courts have long "had power

17

The power "to initiate criminal investigations and prosecutions" is a "core executive power." *Seila Law*, 140 S. Ct. at 2200. That principle is well-settled. "[T]he decision of a prosecutor in the Executive Branch not to indict … has long been regarded as the special province of the Executive Branch." *Heckler v. Chaney*, 470 U.S. 821, 832 (1985). So uniquely executive is that power that we have said "[f]ew subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought." *United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 138 (2d Cir. 2017) (quoting *United States v. Ross*, 719 F.2d 615, 620 (2d Cir. 1983)). In this case, the district court went beyond reviewing the executive branch's decision about instituting a prosecution. The district court appointed a prosecutor and instituted the prosecution itself. That was not a constitutional exercise of inherent judicial authority.

---

to 'inforce the observance of order,' but those 'implied powers' could not support common-law jurisdiction over criminal acts." *Id.* (quoting *United States v. Hudson & Goodwin*, 11 U.S. (7 Cranch) 32, 34 (1812)). The court points to *Young*'s statement that "the prosecution of in-court and out-of-court contempts … both proceed at the instigation of the court." *Ante* at 28 n.15 (quoting *Young*, 481 U.S. at 799). But this statement was based on *Young*'s observation that "[t]he fact that we have come to regard criminal contempt as a crime in the ordinary sense does not mean that any prosecution of contempt must now be considered an execution of the criminal law in which only the Executive Branch may engage." 481 U.S. at 799-800 (internal quotation marks and citation omitted). The court does not adhere to that understanding because it spends the first half of its opinion explaining that the special prosecutors must be "subject to the supervision of the Attorney General." *Ante* at 21.

\*　　　\*　　　\*

In today's decision, the court attempts to reconcile *Young* with the constitutional separation of powers. It ends up following neither. The court's half-hearted adherence to *Young* on plain error review undermines that precedent by rendering ineffective the judicial power *Young* described as necessary. The court's split-the-baby approach to executive power—under which the executive must have the power to *oversee* a prosecution but the judiciary may decide to *initiate* one—undermines the constitutional principle that "[t]he entire 'executive Power' belongs to the President alone." *Seila Law*, 140 S. Ct. at 2197 (quoting U.S. CONST. art. II, § 1, cl. 1).

When the U.S. Attorney declined to prosecute Donziger, he did so as "an officer of the executive department." *Cox*, 342 F.2d at 171. "It follows, as an incident of the constitutional separation of powers, that the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions." *Id.* That is a straightforward conclusion, and it was plainly erroneous not to reach it. I would hold that the appointments of the special prosecutors were void, and I would vacate Donziger's conviction. Accordingly, I dissent.